IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| BRANDON SCOTT BLASDELL, § | |
| TDCJ #1639101, § | |
| § | |
| Petitioner, § | |
| § | |
| v. § | CIVIL ACTION NO. H-17-0570 |
| § | |
| LORIE DAVIS, Director, § | |
| Texas Department of Criminal Justice - § | |
| Correctional Institutions Division, § | |
| § | |
| Respondent. § | |

## MEMORANDUM AND ORDER

State inmate Brandon Scott Blasdell seeks a federal writ of habeas corpus under 28 U.S.C. § 2254 to challenge a state court conviction for aggravated robbery, which resulted in a sentence of thirty years' imprisonment [Doc. # 1]. The respondent has filed a motion for summary judgment, arguing that Blasdell's claims are without merit and that he is not entitled to relief [Doc. # 10]. Blasdell has not filed a response and his time to do so has expired. After considering all of the pleadings and state court records, the Court will grant the respondent's motion and will dismiss this case for the reasons set forth below.

## I.    BACKGROUND

A Montgomery County grand jury returned an indictment against Blasdell in

Cause Number 07-11-11972-CR, charging him with aggravated robbery with a deadly weapon in violation of §29.03(a)(2) of the Texas Penal Code.[1]  At trial, the State presented evidence that a man approached Katy Hadwin as she was putting gas in her car at a Citgo station on the I-45 feeder road in Conroe, Texas, on February 11, 2007.[2] The man pointed a revolver at Hadwin's face and demanded her "fucking purse."[3]  As Hadwin fumbled with her keys and reached for her purse, the man yelled, "Hurry up, bitch."[4] After Hadwin gave him the purse, the man walked to an older-model white pickup truck parked nearby and drove away.[5]  Hadwin left the gas station, but returned to meet with police after she called 911.[6]

Blasdell's identity as the robber was the primary issue at trial, which commenced in June of 2009.  The State presented evidence that Hadwin provided the police a description of the perpetrator and his vehicle on the same night that the offense occurred.[7]  About a week later, Hadwin met with Officer Juan Luis Sauceda

---

[1]     Indictment [Doc. # 11-3], at 9.  For purposes of identification all page citations refer to the page number imprinted on each docket entry by the Court's electronic filing system, CM/ECF.

[2]     Court Reporter's Record, vol. 3 [Doc. # 12-12], at 6-7, 11, 20.

[3]     *Id.* at 20, 22.

[4]     *Id*. at 21.

[5]     *Id.* at 18, 21.

[6]     *Id.* at 21.

[7]     *Id.* at 9-10, 11-12; *see also* Conroe Police Department Field Witness Statement [Doc.
(continued...)

of the Conroe Police Department and filled out a "Suspect Description Form."[8]

Hadwin described the robber as a white male who weighed about 150 pounds, with

short brown hair, light blue/green eyes, a fair complexion, and a "unibrow."[9]  After

Officer Sauceda presented Hadwin with a photographic lineup of six male suspects,

Hadwin identified Blasdell as the robber without hesitation.[10]  Hadwin circled

Blasdell's photo and commented on the photo-array form: "This is the guy who

robbed me.  I am 100% sure that this is the guy."[11]

Hadwin's testimony was the only proof that Blasdell was the robber.  Hadwin

expressed "no doubt" as she identified Blasdell in the courtroom.[12] Hadwin reiterated

that she had been "100 percent sure" when she identified Blasdell in the  photo array

created by Officer Sauceda, emphasizing that she "can't forget his face."[13]  Blasdell's

trial counsel challenged Hadwin on cross-examination and tried to show that her brief

---

[7]        (...continued)
# 12-15], at 9.

[8]        Court Reporter's Record, vol. 3 [Doc. # 12-12], at 22;  *see also* Suspect Description
Form [Doc. # 12-15], at 5.

[9]        Court Reporter's Record, vol. 3 [Doc. # 12-12], at 16-17.

[10]        *Id.* at 12-13, 16.

[11]        *Id.* at 17, 23; *see also* Conroe Police Department Photographic Lineup [Doc. # 12-15],
at 7.

[12]        Court Reporter's Record, vol. 3 [Doc. # 12-12], at 22, 27.

[13]        *Id*. at 22.

encounter with the perpetrator precluded a reliable identification.[14] While the robbery only took "a little longer than [twenty] seconds,"[15] Hadwin testified that the perpetrator was close enough to touch.[16] Although she was frightened, Hadwin still got "a good look" at the man pointing a black revolver in her face.[17]

Blasdell did not testify on his own behalf and called only one witness during the guilt/innocence phase of the trial, board certified forensic psychologist Dr. Steven James Rubenzer, who was offered as an expert on eyewitness identification.[18] During a *Daubert*[19] hearing, Dr. Rubenzer described his expertise and his review of the photographic lineup in this case.[20] The trial court allowed Dr. Rubenzer to give his opinion on various issues relating to the reliability of eyewitness identifications, including problems with identifications made as the result of a photographic line-up.[21] The trial court, however, did not allow him to testify about what is known as the "weapon focus effect," which is described as "a tendency, when there is a weapon involved, particularly in brief encounters, for the weapon to essentially attract

---

[14]   *Id.* at 26.
[15]   *Id.*
[16]   *Id.* at 20.
[17]   *Id.* at 26.
[18]   Court Reporter's Record, vol. 4 [Doc. # 12-13], at 4.
[19]   *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).
[20]   Court Reporter's Record, vol. 4 [Doc. # 12-13], at 4-7, 10-17.
[21]   *Id.* at 17-20.

attention away from the perpetrator's face and, by doing so, result in lesser accuracy for the identification."[22]

After hearing all of the evidence, the jury found Blasdell guilty as charged in the indictment and found in the affirmative that a deadly weapon was used to commit the offense.[23] During a separate punishment hearing, the State presented evidence showing that Blasdell had a lengthy record of criminal offenses.[24] At the close of that proceeding, the jury sentenced Blasdell to thirty years' confinement in the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ").[25]

On direct appeal, Blasdell argued that the trial court erred by excluding Dr. Rubenzer's testimony about the weapon focus effect.[26] The intermediate court of appeals initially affirmed Blasdell's conviction after determining that the trial court did not err in excluding Dr. Rubenzer's testimony because it was not relevant. *See Blasdell v. State*, No. 09-09-00286-CR, 2010 WL 3910586 (Tex. App. — Beaumont Oct. 6, 2010) (unpublished). On discretionary review, the Texas Court of Criminal Appeals reversed and remanded the case for further proceedings. *See Blasdell v.*

---

[22]    *Id*. at 11.

[23]    Judgment of Conviction by Jury [Doc. # 11-3], at 65.

[24]    Court Reporter's Record, vol. 5 [Doc. # 12-14], at 6-23; Court Reporter's Record, vol. 6 [Doc. # 12-15], at 13-64.

[25]    Judgment of Conviction by Jury [Doc. # 11-3], at 65.

[26]    Appellant's Brief on Appeal [Doc. # 11-2], at 4.

*State*, 384 S.W.3d 824, 831 (Tex. Crim. App. 2012). On remand, the intermediate court of appeals again affirmed Blasdell's conviction, holding that the trial court properly excluded the challenged testimony because it was not sufficiently reliable. *See Blasdell v. State*, 420 S.W.3d 406, 412 (Tex. App. — Beaumont 2014). The Texas Court of Criminal Appeals agreed and affirmed that decision. *Blasdell v. State*, 470 S.W.3d 59, 65 (Tex. Crim. App. 2015).

Blasdell challenged his conviction further by filing a state application for habeas corpus relief pursuant to 11.07 of the Texas Code of Criminal Procedure.[27] In that application, Blasdell argued that he was entitled to relief for several reasons that he grouped together in three grounds for relief:

1. Trial counsel provided ineffective representation by failing to (a) challenge his identification by objecting to Officer Sauceda's testimony about the photograph line-up; (b) object to or investigate video surveillance evidence; and (c) better prepare Dr. Rubenzer to testify about the weapon focus effect.[28]

2. Trial counsel should have presented evidence that a person named Billy Smith committed the offense and that Blasdell was actually innocent.[29]

3. Trial counsel should have presented evidence that Blasdell was

---

[27]    State Habeas Application [Doc. # 12-24], at 7-59.

[28]    *Id.* at 30-41.

[29]    *Id.* at 41-46.

not guilty beyond a reasonable doubt.[30]

After considering trial counsel's response to these claims,[31] the state district court issued findings of fact and conclusions of law recommending that the Texas Court of Criminal Appeals deny habeas relief.[32] The Texas Court of Criminal Appeals followed that recommendation and denied habeas relief on the lower court's findings without issuing a written opinion.[33]

Blasdell now contends that he is entitled to federal habeas corpus relief from his conviction for the same reasons that were rejected on state habeas review.[34] The respondent moves for summary judgment, arguing that Blasdell fails to show that the state court's adjudication was unreasonable or wrong and that he is not entitled to relief under the governing federal habeas corpus standard of review.

## II.    STANDARD OF REVIEW

Because the state courts adjudicated Blasdell's claims on the merits, his petition is subject to review under the Antiterrorism and Effective Death Penalty Act of 1996

---

[30]     *Id.* at 46-51.

[31]     Trial Counsel's Response to Designation of Issues and Affidavit ("Counsel's Affidavit") [Doc. # 12-24], at 104-06.

[32]     Findings of Fact, Conclusions of Law and Order ("Findings and Conclusions") [Doc. #12-24], at 112-16.

[33]     Action Taken in Writ No. 76,696-02 [Doc. # 12-19] at 1.

[34]     Memorandum in Support of Federal Application for 2254 ("Petitioner's Memorandum") [Doc. # 4], at 6-27.

("AEDPA"), codified at 28 U.S.C. § 2254(d). Under the AEDPA standard, a federal habeas corpus court may not grant relief unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1). When a claim presents a question of fact, a petitioner cannot obtain federal habeas relief unless he shows that the state court's denial of relief "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

"A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Matamoros v. Stephens*, 783 F.3d 212, 215 (5th Cir. 2015) (citations omitted); *see also Williams v. Taylor*, 529 U.S. 362, 404-08 (2000). To constitute an "unreasonable application of" clearly established federal law, a state court's holding "must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Woods v. Donald*, — U.S. —, 135 S. Ct. 1372, 1376 (2015) (quoting *White v. Woodall*, — U.S. —, 134 S. Ct. 1697, 1702 (2014)). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error

well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

The AEDPA standard "imposes a 'highly deferential standard for evaluating state-court rulings, . . . [which] 'demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations omitted). This standard is intentionally "difficult to meet" because it was meant to bar relitigation of claims already rejected in state proceedings and to preserve federal habeas review as "a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Richter*, 562 U.S. at 102-03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring)); *see also White*, 134 S. Ct. at 1702.

A state court's factual determinations are also entitled to deference on federal habeas corpus review. Findings of fact are "presumed to be correct" unless the petitioner rebuts those findings with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness extends not only to express factual findings, but also to the state court's implicit findings. *See Garcia v. Quarterman*, 454 F.3d 441, 444-45 (5th Cir. 2006) (citing *Summers v. Dretke*, 431 F.3d 861, 876 (5th Cir. 2005); *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004)). A federal

habeas corpus court "may not characterize these state-court factual determinations as unreasonable 'merely because [it] would have reached a different conclusion in the first instance.'" *Brumfield v. Cain*, — U.S. —, 135 S. Ct. 2269, 2277 (2015) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)). "Instead, § 2254(d)(2) requires that [a federal court] accord the state trial court substantial deference." *Id*.

## III. DISCUSSION

In each of his grounds for relief, Blasdell contends that he was denied effective assistance of counsel at his trial in violation of the Sixth Amendment. Claims of ineffective assistance by trial counsel are governed by the standard established in *Strickland v. Washington*, 466 U.S. 668, 686 (1984). Under *Strickland*, a criminal defendant's Sixth Amendment rights are "denied when a defense attorney's *performance* falls below an objective standard of reasonableness and thereby *prejudices* the defense." *Yarborough v. Gentry*, 540 U.S. 1, 3 (2003) (emphasis added); *see also Rompilla v. Beard*, 545 U.S. 374, 387 (2005); *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). To establish deficient performance, the petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland*, 466 U.S. at 687. A petitioner must also show actual prejudice, meaning "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been

different." *Id.* at 694; *see also Wiggins*, 539 U.S. at 534.

"Surmounting *Strickland*'s high bar is never an easy task . . . ." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). When the state courts have already adjudicated the merits of a *Strickland* claim, "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Richter*, 562 U.S. at 101. Federal courts employ a "doubly deferential judicial review" of adjudicated *Strickland* claims that gives wide latitude to state court decisions. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009); *see also Cullen v. Pinholster*, 563 U.S. 170, 201 (2011). "The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 104; *see also Premo v. Moore*, 562 U.S. 115, 123 (2011). Blasdell's allegations of ineffective assistance are addressed separately below.

## A.     Failure to Object to Officer Sauceda's Testimony

Blasdell contends that his trial counsel was deficient because he did not object to the testimony given by Officer Sauceda regarding the victim's pretrial identification. Blasdell contends that his counsel should have objected that Sauceda "ha[d] 'never' performed a live line up, [and] testified to having 'no' training in that

area[.]"[35]   The state habeas corpus court rejected this claim, observing that the evidence at trial showed that Detective Sauceda did not conduct "a 'live line up,' but instead administered a photo lineup to Katy Hadwin, the victim in this case."[36]   The state habeas court also found that, according to his trial testimony, "Sauceda had performed hundreds of photo lineups in the past and took steps in this case to ensure the lineup was not unduly suggestive."[37]   The state habeas court found, therefore, that trial counsel "was not deficient in failing to object to Sauceda's testimony regarding Hadwin's identification of [Blasdell] in the photo lineup."[38]

Blasdell has not refuted any of the state court's findings, which are presumed correct for purposes of federal habeas review.  *See* 28 U.S.C. § 2254(e)(1).  Likewise, Blasdell has not pointed to anything unduly suggestive or improper about the identification process employed by Officer Sauceda and he does not otherwise show that the trial court would have sustained any particular objection to the testimony. Because Blasdell does not establish that the testimony was inadmissible or that his counsel had a valid objection to make, he does not demonstrate deficient performance or actual prejudice.  More importantly, Blasdell does not show that the state court's

---

[35]   Petitioner's Memorandum [Doc. # 4], at 6.

[36]   Findings and Conclusions [Doc. # 12-24], at 110.

[37]   *Id.*

[38]   *Id*. at 113.

decision to reject this claim was unreasonable. As a result, he is not entitled to relief on this claim under the deferential *Strickland* standard.

### B. Failure to Object to or Investigate Video Surveillance Footage

Blasdell appears to argue that defense counsel failed to object to evidence of video surveillance footage that was admitted at trial or to investigate whether there was video footage showing that he was not the robber. Specifically, Blasdell faults trial counsel for not relying on "CCTV footage" to prove that his conviction was "the result of mistaken witness identification."[39] Blasdell's defense counsel, Jarrod Walker, responded in his affidavit to the state habeas corpus court that there was no evidence of any video surveillance in connection with Blasdell's case.[40] The state habeas corpus court found that defense counsel's affidavit was "true and credible," observing further that Walker "has long-practiced in the courts of Montgomery County" and was "well qualified to represent criminal defendants in felony cases," such as those lodged against Blasdell.[41] Based on defense counsel's credible affidavit and its review of the record, the state habeas corpus court summarily rejected Blasdell's ineffective-assistance claim concerning video surveillance footage, concluding that Blasdell failed to show that defense counsel's investigation was

---

[39]     Petitioner's Memorandum [Doc. # 4], at 7, 10-11.

[40]     Counsel's Affidavit [Doc. # 12-24] at 104.

[41]     Findings and Conclusions  [Doc. #12-24], at 113.

deficient.[42]

Credibility findings are entitled to substantial deference on federal habeas review and are presumed correct under 28 U.S.C. § 2254(e)(1) absent clear and convincing evidence to the contrary. *See Coleman v. Quarterman*, 456 F.3d 537, 541 (5th Cir. 2006) (citing *Guidry v. Dretke*, 397 F.3d 306, 326 (5th Cir. 2005)); *Valdez v. Cockrell*, 274 F.3d 941, 947 (5th Cir. 2001). Blasdell has not rebutted the state habeas corpus court's credibility determination or the fact findings on this issue. Blasdell has not presented any video evidence in support of his claim and he does not otherwise show that exculpatory video surveillance footage was available, but disregarded by his trial counsel. To the extent that Blasdell contends that his trial counsel was deficient for failing to investigate and present evidence, he cannot succeed without showing what new evidence trial counsel should have adduced and how that evidence would have made a difference at trial. *See Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005) (citing *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989)). His conclusory allegations of ineffectiveness are insufficient to demonstrate deficient performance or actual prejudice. *See Day v. Quarterman*, 566 F.3d 527, 540-41 (5th Cir. 2009); *see also Lincecum v. Collins*, 958 F.2d 1271, 1279 (5th Cir. 1992) (denying habeas relief where petitioner "offered nothing more than the

---

[42]    Findings and Conclusions [Doc. # 12-24], at 115.

conclusory allegations in his pleadings" to support claim that counsel was ineffective for failing to investigate and present evidence). Accordingly, Blasdell does not show that the state court's decision to reject this claim was unreasonable or that he is entitled to federal habeas corpus relief.

### C. Failure to Adequately Prepare Dr. Rubenzer to Testify

Blasdell faults trial counsel for not preparing Dr. Rubenzer to testify about weapon focus effect, arguing that his identification as the perpetrator was mistaken. This claim stems from Blasdell's unsuccessful appellate proceedings. As noted above, the Texas Court of Criminal Appeals ultimately concluded that, while Dr. Rubenzer was allowed to provide extensive testimony about other weaknesses that are inherent in eyewitness identifications, the trial court did not abuse its discretion in disallowing his proposed testimony about weapon focus effect. The Texas Court of Criminal Appeals provided two reasons for affirming the trial court's decision: (1) the "limited information in this record" would not allow the court to "say that the weapon-focus-effect theory has been generally recognized as a valid hypothesis so as to be admissible"; and (2) Dr. Rubenzer only "stated that the theory 'possibly' was applicable to the facts of this case," but "did not describe any principles of the theory

or the methodology by which he would apply those principles."[43]

On state habeas review, defense counsel explained that he discussed the weapon focus effect with Dr. Rubenzer prior to trial and "believed that we had cleared the necessary hurdles for the Court to allow the testimony. Unfortunately, the Court would not allow this testimony."[44] The state habeas corpus court observed that Blasdell failed to support his ineffective-assistance claim by providing "scientific literature, research, or other information that could have been used to establish the reliability of Dr. Rubenzer's proffered 'weapon focus effect' testimony."[45] Noting that Blasdell did not otherwise suggest what more defense counsel could have done, the state habeas court rejected Blasdell's claim as "vague, inarticulate, and nonspecific."[46] The state habeas corpus court concluded, therefore, that Blasdell failed to show that defense counsel's pretrial preparation was deficient.[47]

Blasdell has also failed to provide specific information on federal review about what more his defense counsel could have done. Blasdell has not alleged facts explaining how defense counsel could have better prepared Dr. Rubenzer such that the trial court would have allowed testimony about weapon focus effect. Even without

---

[43]     *Blasdell*, 470 S.W.3d at 65-66.

[44]     Counsel's Affidavit [Doc. # 12-24] at 104.

[45]     Findings and Conclusions [Doc. # 12-24], at 114.

[46]     *Id*.

[47]     *Id*. at 115.

the testimony, the state habeas court found that trial counsel capably elicited "ample credible testimony from Dr. Rubenzer regarding the potential inaccuracies and shortfalls pertaining to the subject of eyewitness identification, including specific testimony regarding an eyewitness's potential distraction from accurately identifying an individual when a weapon is pointed in the witness's face."[48]  Trial counsel also "effectively presented defensive evidence that would allow a jury to question the accuracy of Hadwin's identification of the [Blasdell] as the perpetrator. . . ."[49] Nevertheless, "the jury merely chose to believe Hadwin's testimony."[50]

Based on this record, Blasdell has not demonstrated that his counsel's performance was deficient or that the state habeas court's decision was unreasonable. Thus, he fails to show that the state habeas court's decision was contrary to, or unreasonable application of, the clearly established *Strickland* standard.  Therefore, Blasdell is not entitled to relief on this claim.

### D.    Failure to Present Proof of Actual Innocence

In two overlapping grounds for relief, Blasdell faults his trial counsel for not presenting evidence that would have established his actual innocence beyond a

---

[48]      *Id*. at 114.

[49]      *Id*.

[50]      *Id*.

reasonable doubt.[51]  In particular, Blasdell argues that trial counsel did not explore the

possibility that another man committed the robbery.[52]  In support of this claim,

Blasdell points to his own affidavit in which he states that a friend of his named Billy

Williams Smith was using Blasdell's truck around the time of the robbery.[53]  Blasdell

avers that, when he heard that the police had issued a warrant for his arrest for the

robbery, he confronted Smith, who "didn't deny" having committed the crime.[54]

According to Blasdell, Smith wanted to contact Detective Sauceda and "take care of

it," but Blasdell told him to wait and "see what happens first."[55]  Two years later,

Blasdell went to trial and was convicted without any mention of Billy Smith as the

perpetrator.[56]  Several years after Blasdell's case went to trial, Smith died from a

gunshot wound to the head while separate robbery charges were pending against

him.[57]

Blasdell argues that his affidavit is proof of his innocence and he faults his trial

counsel for not using this information as the basis for a successful trial defense.  In

---

[51]     Petition [Doc. # 1], at 6-7; Petitioner's Memorandum [Doc. # 4] at 17-27.

[52]     Petition [Doc. # 1], at 6.

[53]     Affidavit of Brandon Scott Blasdell [Doc. # 12-24], at 53-55.

[54]     *Id*. at 54.

[55]     *Id.*

[56]     *Id*.

[57]     *Id*.

response to this allegation, defense counsel explained that he did not present this information at trial because Blasdell "never mentioned anyone by the name of Billy Williams Smith."[58] The state habeas corpus court found that Blasdell "did not tell [defense counsel] about an alleged alternative perpetrator" and that, at the time of trial, counsel had "no way of knowing about the alleged existence of 'Billy Williams Smith.'"[59] The state habeas court found, moreover, that Blasdell's affidavit was "not credible."[60] Because Blasdell has not provided clear and convincing evidence to rebut that finding, this Court must presume that the state habeas court correctly found that his affidavit was not believable. Based on that credibility finding, the state habeas court concluded that Blasdell "failed to establish – or even adequately allege[] – that he is 'actually innocent.'"[61]

Blasdell has not presented any evidence to substantiate his claim that Smith committed the robbery or to rebut the state habeas corpus court's findings and he has not established that he is actually innocent.[62] Blasdell does not allege that he ever

---

[58]    Counsel's Affidavit [Doc. # 12-24], at 105.

[59]    Findings and Conclusions [Doc. # 12-24], at 114.

[60]    *Id*. at 115.

[61]    Findings and Conclusions [Doc. # 12-24], at 115 (quoting *Schlup v. Delo*, 513 U.S. 298 (1995); *Herrera v. Collins*, 506 U.S. 390 (1993); *Ex parte Elizondo*, 94 7 S.W.2d 202, 209 (Tex. Crim. App. 1996)).

[62]    To the extent that Blasdell argues that he is actually innocent, a claim of actual innocence, standing alone, is not an actionable ground for relief on federal habeas corpus
(continued...)

mentioned Smith to his defense counsel as an alternative perpetrator and he has not demonstrated what else his counsel could have done to raise doubt about his identification by the victim, who was robbed at arms length and testified without any hesitation that she was "100 percent sure" that Blasdell was the robber.[63]  Because Blasdell has neither alleged nor established that additional investigation by trial counsel would have yielded credible, game-changing evidence, he cannot show deficient performance or resultant prejudice for purposes of making a *Strickland* claim.  Thus, Blasdell has not shown that the state habeas court's rejection of his claims was contrary to, or an unreasonable application of, clearly established federal law.  Because Blasdell has failed to establish that any of his claims merit relief, the respondent is entitled to summary judgment and the petition will be dismissed.

## V. <u>CERTIFICATE OF APPEALABILITY</u>

---

[62]     (...continued)
review.  *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *see also In re Swearingen*, 556 F.3d 344, 348 (5th Cir. 2009); *Lucas v. Johnson*, 132 F.3d 1069, 1075-76 (5th Cir. 1998).  Even assuming that it were, the Supreme Court has emphasized that a "truly persuasive" showing of actual innocence would have an "extraordinarily high" threshold.  *Herrera*, 506 U.S. at 417.  A credible claim would require new, reliable evidence that was not presented at trial, but for which, in light of all of the evidence, it is more likely than not that no reasonable juror would have convicted him.  *See Bousley v. United States*, 523 U.S. 614, 623 (1998) (quoting *Schlup v. Delo*, 513 U.S. 298, 328 (1995)).  Because Blasdell does not present any new, reliable evidence, he does not demonstrate that he has a credible claim of actionable innocence in this case.

[63]     Court Reporter's Record, vol. 3 [Doc. # 12-12], at 17, 22-23.

Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner. A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). After careful review of the pleadings and the applicable law, the Court concludes that reasonable jurists would not find the assessment of the constitutional claims debatable or wrong. Because the petitioner does not otherwise allege facts showing that his claims could be resolved in a different manner, a certificate of appealability will not issue in this case.

## VI.  CONCLUSION AND ORDER

Accordingly, the Court **ORDERS** as follows:

1.     The respondent's motion for summary judgment [Doc. # 10] is

       **GRANTED**.

2.     The federal habeas corpus petition filed by Brandon Scott Blasdell [Doc.

       # 1] is **DENIED**, and this case is **DISMISSED** with prejudice.

3.     A certificate of appealability is **DENIED**.

The Clerk will provide a copy of this order to the parties.

SIGNED at Houston, Texas, on <u>October 17,</u> 2017.


                                    NANCY F. ATLAS
                          SENIOR UNITED STATES DISTRICT JUDGE